UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID H. RUSSELL FAMILY LTD. PARTNERSHIP, LLLP, and NORTHSTAR GAS VENTURES, LLC, | § § § § | |
| Plaintiffs, | § | |
| VS. | § § § § | CIVIL ACTION NO. 4:17-CV-1230 CIVIL ACTION NO. 4:17-CV-1266 (Consolidated) |
| STEPHEN H DERNICK, *et al*, | | |
| Defendants. | | |

## ORDER AND OPINION ON SUMMARY JUDGMENTS

Before the Court are two summary judgments in the consolidated.[1] Pending before the Court, under Cause No. 4:17-CV-1230 is Plaintiff David H. Russell Family Limited Partnership, LLLP's ("Russell") Motion for Summary Judgment, Doc. 12, Defendants Stephen H. Dernick and David D. Dernick's (collectively, the "Dernicks" or "Defendants") Response and Cross-Motion for Summary Judgment, Doc. 16, Russell's Response to Cross-Motion and Reply, Doc. 17, the Dernicks' Reply in support of their Cross-Motion, Doc. 19, and Russell's Motion to Strike the Dernicks' Reply in support of their Cross-Motion, Doc. 20. Also pending before the Court, under Cause No. 4:17-CV-1266, is Plaintiff Northstar Gas Ventures, LLC's ("Northstar") Motion for Summary Judgment, Doc. 10, Dernicks' Response and Cross-Motion for Summary Judgment, Doc. 12, Northstar's Response and Reply, Doc. 16, and the Dernicks' Reply, Doc. 17. After considering these documents and the applicable law, the Court grants Russell and

---

[1] All of Russell's motions, the Dernicks' replies to Russell, and Russell's responses refer to documents under Cause No. 4:17-CV-1230, unless otherwise specified. All of Northstar's motions, the Dernicks' replies to Northstar, and Northstar's responses refer to documents under Cause No. 4:17-CV-1266, unless otherwise specified.

Northstar's Motions for Summary Judgment, denies the Dernicks' Cross-Motions for Summary Judgment, and denies Russell's Motion to Strike as moot.

Russell and Northstar asks for the court to award promissory note principal along with pre- and post-judgment interest, and any other relief allowed, such as attorney's fees and costs.

## I. Background

This case involves the interpretation of two unpaid promissory notes, and the relevant facts are not in dispute. Docs. 1, 12, 16-1, 16-2. Thus, the Court will cite to, but not separately identify each document cited.

The Dernicks, on behalf of Dernick Land, LLC, borrowed funds from Russell and Norsthar to capitalize Dernick Encore, LLC, an oil and gas company based in Houston, Texas. Doc. 1. All parties executed an Amended and Restated Dernick Land Pledge Agreement, Doc. 1-3, and the Dernicks individually issued promissory notes to Russell and Northstar (collectively, the "Notes," Doc. 1 at 3.

The Dernicks also do not dispute the initial amounts of the Notes. Stephen Dernick promised to pay Russell $4,939,484, Doc. 1-1, and David Dernick promised to pay Russell $3,978,975, Doc. 1-2. Stephen Dernick promised to pay Northstar $1,549,733, Cause No. 4:17-CV-1266, Doc. 1-1, and David Dernick promised to pay Northstar $1,248,385, Cause No. 4:17-CV-1266, Doc. 1-2. All Notes accrued at an interest rate of 18% per annum or the maximum amount of allowable by law, compounded annually. *See, e.g.*, Doc. 1-1.

The Notes were secured by the Dernicks' pledge of interest in Dernick Land and Dernick Land's interest in Dernick Encore. Doc. 1 at 3–4; Docs. 1-1 & 1-2, Cause Nos. 4:17-CV-1230 & 1266. Section 4 "expressly waived" any "notice of demand" or requirement of "demand" upon "Event of default." Section 5 holds the Dernicks "personally liable" if they do not pay all "all

outstanding principal, accrued but unpaid interest, and/or accrued and unpaid costs and expenses." But, Section 5 also requires that the Defendants to "first" look to the "interests in Dernick Land and Dernick Encore" to satisfy the "obligations hereunder." Section 6 provides for how the conversion of and appraisal of the "Member Interests" in "Dernick Encore" should be made in satisfaction of the debt. Docs. 1-1 & 1-2, Cause Nos. 4:17-CV-1230 & 1266.

Section 5 makes the Dernicks personally liable for any outstanding debt after Russell and Northstar look to the Member Interests for satisfaction of the debt. Section 5 is as follows:

> **5. Recourse.** If Maker is unable to pay in full all outstanding principal, accrued but unpaid interest, and/or accrued and unpaid costs; and expenses to which Payee is legally entitled under this Note and under the Pledge Agreement, Maker shall be personally liable and Payee will have full recourse against any real, personal, tangible or intangible assets of Maker for such deficiency; provided, however, that Payee agrees to look first solely to the units and member interests in Dernick Land and Dernick Encore pledged under the Pledge Agreements to satisfy Maker's obligations hereunder.

*Id*.

As to conversion, Section 6 provided that, absent an election by Russell and Northstar, the balance would be converted immediately into Dernick Encore Member Interests following January 5, 2016, at a discount rate of seventy percent (70%) of the then-current fair market value, as follows:

> **6. Conversion Right**. Absent an election by Payee to have less than its entire outstanding balance due converted immediately following the Maturity Date, any outstanding principal and accrued interest shall be automatically converted into additional member interests in Dernick Encore to be transferred out of Dernick Land's interest therein at a conversion discount rate of seventy percent (70%) of the then-current fair market value of said Dernick Encore Member Interests pursuant to the terms of this Paragraph 6….

*Id*.

As to appraisal, Section 6 then outlines the steps to determine the value of the transferred interests. First, Russell and Northstar should notify the Dernicks that they seek appraisal.

Second, each party selects an appraiser, and those two appraisers select a third appraiser. Third, using Dernick Encore's financials and industry standard methods, the appraisers are to complete the appraisal no later than February 4, 2016, thirty days after maturity. Fourth, following appraisal, Dernick Land's Member Interests in Denrick Encore are transferred. But, fifth, if the appraisal is not completed after thirty days, then any unpaid amount accrues at twenty-four (24%) percent annually from February 5, 2016.

The pertinent portions of Section 6 are as follows:

If on November 1, 2015, any part of this Note is still owing and outstanding, Maker shall notify Payee in writing that Maker is commencing the fair market valuation of Dernick Encore as provided herein. The fair market value of Dernick Encore will be determined by using the average calculation of three (3) independent oil and gas appraisers, to be selected below, each with a minimum of ten (10) years' experience appraising exploration and production companies in the oil and gas industry. Within ten (10) business days after Maker's notification to Payee above, each of Maker and Payee shall select an appraiser, which appraisers shall in turn select a third appraiser within ten (10) business days after having been selected. In addition to using Dernick Encore's most currently available and updated reserve report and financials (pro forma and forecast where necessary as of the Maturity Date), the appraisers will use best efforts to determine the fair market value of Dernick Encore Member Interests using industry standard methods and presuming industry and company conditions as of 12/31/2015. The reasonable expenses of the appraisal process shall be borne by Maker. The appraisal process shall be completed no later than thirty (30) days after the Maturity Date and transfer of Dernick Land's discounted Member Interests in Dernick Encore in payment of any remaining balance due on the Notes (or part thereof if elected by Payee), shall be completed as soon as possible thereafter. If the appraisal is not completed by such date (except if any delay is caused by Payee's appraiser), the interest on any outstanding unpaid amount hereunder will accrue at twenty-four percent (24%) annually (in lieu of the eighteen percent (18%) above) at the end of such 30-day period and until the final appraisal process is complete. Maker shall take, and cause to be taken, all reasonable actions necessary, and shall execute all documents required, to effectuate any transfer of Dernick Encore Member interest hereunder.

*Id*.

And as to satisfaction of the debt, should the "Member Interests" be insufficient to "satisfy all remaining claims," payment priority "shall be in accordance with Schedule 1," and

payment would not limit "other creditor remedies." *Id*. The pertinent portion of Section 6 is as follows:

> The parties recognize that the discounted fair market value of Dernick Land's Member Interests may not be sufficient to satisfy all remaining claims and hereby agree that payment priority shall be in accordance with Schedule 1 of the Pledge Agreements, and further, that said payment shall not limit or exclude any or all other creditor remedies available to Payees.

*Id*.

The Notes matured unpaid and the member interests transferred. Docs. 12 at 10–12, 52; 16-1 at 3; 16-2 at 3. Neither Russell nor Northstar made an election, and so triggered Section 6's conversion and appraisal provisions. But BSP Agency, LLC ("BSP") had a lien on all the assets of Dernick Encore and a Subordination Agreement that subordinated Russell and Northstar's rights to BSP's rights. Docs. 16-1 at 3; 16-2 at 3. Subsequently, Russell issued a Standstill agreement ("Standstill") that was signed by the parties and BSP. Docs. 12 at 11, 43–51; 16-1 at 3–4; 16-2 at 3–4.

Within the Standstill, the parties agreed to modify the Section 6 appraisal process at step two by limiting the appraisal to "two appraisers" and at the third step, requiring the appraisal "to be completed thirty (30) days from the Effective Date [January 19, 2016]," instead of the Maturity Date. They added that the "failure to complete the Appraisal in thirty (30) days from the Effective Date will result in a zero-value valuation." Doc. 12 at 43. Russell and Northstar also agreed not to take any action regarding default until "fifty (50) days" from January 19, 2016. Doc. 12 at 43–45. But no appraisal was ever completed. Docs. 16-1 at 4; 16-2 at 4.

Russell filed this lawsuit on April 19, 2017, and the Dernicks Answered on May 17, 2017. Docs. 1 & 11. Northstar filed its lawsuit on April 24, 2017, and the Dernicks Answered on May 26, 2017. CA 4:17-CV-1266, Docs. 1 & 9.

In its Complaint, Russel asserts diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a), with the controversy exceeding $75,000. Doc. 1 at 2. In support of that assertion, Russell alleges that its "principal place of business [is] located in Aventura, Florida," and its limited partners, "David H. Russell, Susan T. Russell[,] and David H. Russell III" are "citizens and residents of Florida," and its general partners are "[t]he David H. Russell Revocable Living Trust and the Susan T. Revocable Living Trust." *Id*. at 1–2. David H. Russell and Susan T. Russell are the trustees for the respective living trusts. *Id*. at 2. Russell also alleges that the Dernicks reside in Houston, Texas. *Id*.

In its Complaint, Northstar also asserts diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a), with the controversy exceeding $75,000. Doc. 1 at 2. In support of that assertion, Northstar alleges that it is organized under "the laws of the State of Delaware, with its principal place of business located in Boston, Massachusetts," and its members, "Brent, LLC, Harrisburg Partners, LLC, Kemosable, LLC and RSIS Business Trust" are not "Texas entit[ies]," and each "has its principal place of business in Massachusetts." *Id*. at 1. Northstar also alleges that the Dernicks reside in Houston, Texas. *Id*.

In its Supplemental Certificate of Interested Parties, Northstar expands upon the residency of its members' members. Doc. 13. According to the Certificate, Brent, LLC's members reside in Massachusetts; Harrisburg Partners, LLC's members reside in Massachusetts and Washington; Kemosabe, LLC members reside in New Hampshire; and the RSIS Business Trust's Trustee and Sole beneficiary resides in Massachusetts. Doc. 13 at 2–3.

The parties filed Motions for Summary judgments, Cross-Motions for Summary Judgment, Responses, and Replies. In their Motions for Summary Judgment, Russell and Northstar allege that the Dernicks failed to pay as required by the Notes after the transfer of the

Dernick Land Member Interests, and which the Standstill valued at zero. Docs. 12 & 10, Cause Nos. 4:17-CV-1230 & 1266. The Dernicks assert that Russell and Northstar insufficiently plead jurisdiction, and that the debt was satisfied when the Dernick Land Member Interests transferred, regardless of the valuation. Docs. 16 & 12, Cause Nos. 4:17-CV-1230 & 1266. On March 7, 2018, the Court consolidated these two cases. Doc. 37. These Motions are now ripe for review.

The Court first addresses the jurisdiction, then contract interpretation issue.

## II. Jurisdiction

The Dernicks contend, under 12(b)(1), that the Court lacks subject matter jurisdiction because both Russell and Northstar failed to allege facts sufficient to support the diversity aspect of diversity jurisdiction. *Id.*

It is fundamental that federal courts must establish subject matter jurisdiction prior to reaching the substantive claims of a lawsuit. *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 223 (5th Cir. 2012). If the court lacks either the statutory or constitutional authority to adjudicate a claim, then the claim shall be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). When considering such a jurisdictional challenge, a "court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dept't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). Thus, a court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Voluntary Purchasing Grps., Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989). The burden of establishing subject matter

jurisdiction is on the party asserting jurisdiction. *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *Turner Indus. Grp., LLC v. Int'l Union of Operating Eng'rs, Local 450*, 8 F. Supp. 3d 875, 883–84 (S.D. Tex. 2014). A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In a facial attack, allegations in the complaint are taken as true. *Blue Water Endeavors, LLC v. AC & Sons, Inc. (In re Blue Water Endeavors, LLC)*, Ch. 11 Case No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, at *3 (Bankr. E.D. Tex. Jan. 6, 2011) (citing *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995)). And those allegations are taken liberally. *See Cap. Guidance Assocs. IV v. NCNB Tex. Nat'l Bank*, No. H-90-331, 1991 WL 210740, at *5 (S.D. Tex. Oct. 7, 1991).

Under 28 U.S.C. §1332, a defendant may remove a case if there is (1) complete diversity of citizenship and (2) the amount in controversy is greater than $75,000, exclusive of interests and costs. *See* 28 U.S.C. § 1332(c)(1).

### A. Russell

The Dernicks contend that Russell does not allege sufficient facts about "the citizenship of each of Plaintiff's general and limited partners." Doc. 16 at 2. The Dernicks assert that for a "'traditional trust,' courts look to the citizenship of the trust's trustee; but, if it is a 'business trust,' courts look to the citizenship of the trust's members." *Id*. (citing *Bryant v. CIT Group/Consumer Fin.*, CV H-16-1840, 2017 WL 1344972, at *3 (S.D. Tex. Apr. 12, 2017)).

Because Russell has not alleged which type of trust it is, and has not alleged the citizenship of its members, then the Dernicks assert that Russell "has not met its burden to establish diversity jurisdiction." *Id*. at 2–3. And, the Dernicks request dismissal. *Id*. at 3.

Russell replies that by "pleading the citizenship of the trustee for the revocable trusts," Russell has "met its burden." Doc. 17 at 16. In support, Russell attaches declarations by David and Susan indicating they are the "trustee[s]" and "sole beneficiar[ies]" of their respective trusts, and that they are citizens of "Florida." Doc. 17-1.

The Dernicks' response does not address Russell's declarations. Doc. 19, and so the Court finds that both trustees and beneficiaries of the trusts are Florida citizens. *See Voluntary Purchasing Grps., Inc.*, 889 F.2d at 1384.

The Court need not decide whether the trust is a traditional trust or a business trust because the outcome for diversity purposes would be the same. Russell is a citizen of Florida, whether determined by its Florida place of business or Florida Resident limited and general partners. Doc. 1 at 1–2. And the Dernicks do not dispute that they are Texas citizens. Thus, construing the complaint as true and supplemented by undisputed declarations, the Court holds that Russell has established sufficient evidence of its diversity from the Dernicks for diversity jurisdiction. *See id.*, *In re Blue Water Endeavors, LLC*, 2011 WL 52525, *3.

### B. Northstar

The Dernicks also allege that Northstar has not "met its burden to establish diversity jurisdiction" because it has not provided enough information about Northstar's members. Doc. 12, 4:17-CV-1266. The parties agree that the citizenship of a limited liability company is determined by its members, *see Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008), and that its trust member is determined by its trustee or its beneficiaries, *See Americold*

*Realty Trust v. Conagra Foods, Inc.*, 136. S.Ct. 1012, 1016 (U.S. 2016). Docs. 12 at 2; 16 at 11–12. But the Dernicks allege that Northstar has not identified the members of its members, i.e. the members of "Brent, LLC, Harrisburg Partners, LLC, or Kemosable, LLC," or the relevant information to determine the citizenship of the RSIS Business Trust. Doc. 12 at 2. Thus, the Dernicks assert that Northstar has not met its jurisdictional burden. *Id*.

Northstar calls the Court's attention to the Supplemental Certificate of Interested Parties and attached declaration of Bob Carson, Doc. 13, wherein it alleges that the members of Northstar's company members and Trusts are residents of Massachusetts, New Hampshire, and Washington. Doc. 16 at 12. Considering this supplement, the Court finds that Northstar and its members are citizens of Massachusetts, New Hampshire, and Washington. And the Dernicks again do not dispute that they are Texas citizens. Thus, construing the complaint as true and supplemented Certificate and undisputed declaration of Bob Carson, the Court holds that Northstar has established sufficient evidence of its diversity from the Dernicks for diversity jurisdiction. *See id.*; *In re Blue Water Endeavors, LLC*, 2011 WL 52525, *3.

## III. Summary Judgment

In their Motions for Summary Judgment, Russell and Northstar allege that the Dernicks failed to pay as required by the Notes after the transfer of the Dernick Land Member Interests, which were valued at zero. Docs. 12 & 10, Cause No. 4:17-CV-1230 & 1266. The Dernicks assert that the debt was satisfied when the Dernick Land Member Interests transferred, regardless of the valuation. Docs. 16 & 12, Cause No. 4:17-CV-1230 & 1266.

### A. Legal Principles

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the

pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hanif v. United States*, No. CV H-15-2718, 2017 WL 447465, at *4 (S.D. Tex. Feb. 2, 2017). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) and *Liberty Lobby*, 477 U.S. at 249–50).

The movant bears the initial burden "of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1995) (for the party opposing the motion for summary judgment, "only evidence—not argument, not facts in the complaint—will satisfy' the burden."). Likewise, unsubstantiated assertions, conclusory allegations, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). "The burden then shifts to 'the nonmoving party to go beyond the pleadings and by her own affidavits [and other competent evidence] designate specific facts showing that there is a genuine issue for trial.'" *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 324).

To state a claim for breach of contract in the promissory note context, a plaintiff must establish: "(1) the existence of the note in question; (2) that the party sued signed the note; (3)

that the plaintiff is the owner or holder of the note; and (4) that a certain balance is due and owing on the note." *PlainsCapital Bank v. Anaya-Gomez*, No. 7:14-CV-00729, 2017 WL 971655, at *2 (S.D. Tex. Mar. 14, 2017) (Alvarez, J.) (citing *SMS Fin., Ltd. Liab. Co. v. ABCO Homes, Inc.*, 167 F.3d 235, 238 (5th Cir. 1999)); *see also Lewis v. Bank of Am. NA*, 343 F.3d 540, 544–45 (5th Cir. 2003) (setting out the more general test).

In Texas,[2] when the interpretation of a contract is at issue, the trial court must determine whether the provisions in question are ambiguous. *Nicol v. Gonzales*, 127 S.W.3d 390, 394 (Tex. App.—Dallas 2004, no pet.) (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)). Ambiguity is a question of law for the court to decide. *Tremont LLC v. Halliburton Energy Servs., Inc.*, 696 F. Supp. 2d 741, 839–40 (S.D. Tex. 2010) (citing *Coker*, 650 S.W.2d at 393); *Nat'l Union Fire Ins. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (citations omitted). The court's ambiguity determination is made by looking at the contract as a whole in light of the circumstances present when the parties entered the contract and the contract's express language. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). When considered as a whole, a contract is ambiguous only if "its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Coker*, 650 S.W.2d at 393 (citation omitted). "If a contract is worded in such a manner that it can be given a definite or certain legal meaning, then it is not ambiguous." *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996) (citing *Nat'l Union*, 907 S.W.2d at 520; *Coker*, 650 S.W.2d at 393).

"Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." *Tex. v. Am. Tobacco*

---

[2] The parties do no dispute that Texas law applies in this case.

*Co.*, 463 F.3d 399, 407 (5th Cir. 2006) (citing *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 732–33 (Tex. 1982); *Gen. Accident Ins. Co. v. Unity/Waterford–Fair Oaks, Ltd.*, 288 F.3d 651, 657 (5th Cir. 2002)). Lack of clarity or inartful drafting will not alone render an agreement ambiguous. *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (citation omitted); *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003); *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). A contract is also not ambiguous simply because the parties disagree over its meaning and advance conflicting interpretations of it. *Dynegy Midstream Servs., Ltd. P'hip v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). But "where a contract is ambiguous, interpretation of the contract becomes a question of fact, and therefore summary judgment is inappropriate." *Boston Ship Repair LLC v. Ocean Ships Inc.*, No. 4:14-CV-405, 2016 WL 4398677, at *3 (S.D. Tex. Aug. 18, 2016) (citing *Dell Computer Corp. v. Rodriguez*, 390 F.3d 377, 388–89 (5th Cir. 2004)).

"Texas courts have consistently adhered to the rule that a modification to a contract must itself be supported by consideration to be valid." *Walden v. Affiliated Computer Services, Inc.*, 97 S.W.3d 303, 314 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citations omitted). *See also Rhoads Drilling Co. v. Alfred*, 70 S.W. 2d 576, 583 (Tex. 1934) (parties "may modify their contract in any manner they choose; and that generally a new consideration is required in order for an attempted modification of a contract to be valid."). "If there was a prior concluded contract entered into by the parties, a subsequent contract on the same subject matter at variance with or contradictory to the prior subsisting contract, without new consideration, the subsequent contract is of no legal force or effect." *Pace Concerts, Inc. v. Smith*, 990 F.2d 626 (5th Cir. 1993) (citing *Bates Grain Co. v. Cassidy*, 225 S.W.2d 1018, 1019 (Tex. App.—Dallas 1950, writ ref'd n.r.e.)).

**B. Discussion**

Russell and Northstar's summary judgments make essentially the same arguments and the Dernicks respond to both in essentially the same way. Russell and Northstar assert that the Dernicks failed to pay under the promissory note, and the Dernicks assert that they owe nothing because debt was satisfied by the Member Interests transfers. Russell, unlike Northstar's summary judgment, counters that because the "fair market value of Dernick Land's member interests would be $0," the "transfer did not satisfy any portion of the debt." Doc. 12 at 4. But Northstar asserts this same argument in its Response to the Dernicks' Cross-Motion for summary judgment. Doc. 16 at 2, Cause No. 4:17-CV-1266.

Here, Russell and Northstar have submitted summary judgment evidence supporting the essential breach of contract elements: (1) the Notes are attached to the respective Motions; (2) showing the Dernicks' respective signatures; (3) Russell and Northstar both allege that they are the owner of the Notes, as identified in the Notes; and (4) the Notes lay out the principal and interest amount for each note that is due. Doc. 1-1 & 1-2, Cause Nos. 4:17-CV-1230 & 1266 Because the Dernicks only contest element four, the Court does not explicitly detail the evidence for the first three elements. Doc. 16 at 14. Russell and Northstar have established a prima facie case for breach of contract, and the burden shifts to the Dernicks. *See Celotex Corp.*, 477 U.S. at 323–24.

### The Dernicks' Response and Cross-Motion for Summary Judgment

In their Response and Cross-Motion for Summary Judgment, the Dernicks make two central contentions on how the Member Interests satisfied the debt: (a) that no amounts are "due and owing" on the "unambiguous" notes; (b) the Standstill agreement is irrelevant because it was signed "after the conversion had already occurred, and … did not alter" the Notes or "undo the

automatic conversion" of Member Interests. Alternatively, the Dernicks assert Section 6 may be subject to two interpretations that render the contract sufficiently ambiguous to preclude summary judgment. Doc. 16 at 14, 17–18. Thus, the Dernicks request that the Court dismiss Russell and Northstar's claims with prejudice or deny the summary judgment. *Id.*; *see also* Doc. 12, Cause No. 4:17-CV-1266, making the essentially the same contentions against Northstar.

As to their first and main contention that no amount is due or owing, the Dernicks allege that the language of Section 6 gave Russell and Northstar an option on January 5, 2016, "do nothing and any outstanding debt would . . . automatically be converted to additional Member Interests in Dernick Encore extinguishing the debts," or Russell and Northstar could have "elected to carve out all or a portion of the debt from the conversion." Doc. 16 at 14. Specifically, they call the Court's attention to this language from Section 6, which is presented as the Dernicks emphasize it:

> ***Absent an election by Payee*** to have less than its entire outstanding balance due converted ***immediately following the Maturity Date***, any outstanding principal and accrued interest shall be ***automatically converted*** into additional member interests in Dernick Encore to be transferred out of Dernick Land's interest…. transfer of Dernick Land's discounted Member Interests in Dernick Encore in payment of ***any remaining balance due on the Notes (or part thereof if elected by Payee)*** shall be completed as soon as possible thereafter.

*Id.*

The Dernicks assert that Russell and Northstar "did ***not*** elect" to carve out any debt from conversion, and so the conversion and transfer "constituted payment **in full**." *Id.* at 15. Because the debt was paid, the Dernicks assert that there is no "balance due and owing," and the fourth element of a breach of contract has not been established. *Id.*

In support the Dernicks cite to *Roswell Cap. Partners, LLC. v. Beshara* for the proposition that "the underlying security interest could not survive the debt's extinguishment,"

"once the debt was fully satisfied via the conversion." 436 F. App'x 34, 35 (2d Cir. 2011); *Roswell Capital Partners LLC v. Alternative Const. Techs.*, 08 CIV. 10647 DLC, 2010 WL 3452378, at *6 (S.D.N.Y. Sept. 1, 2010). The Dernicks assert that Russell and Northstar should "not be allowed to resurrect the debt after the automatic conversion and transfer extinguished the debts owed under the Amended Notes." Doc. 19 at 13 n.9.

And the sole purpose of the subsequent appraisal process was to "prevent a potential windfall to Plaintiff" by determining the "value of any residual" Member Interests, "if any, that would remain under Dernick Land's control and ownership." Doc. 16 at 9.

The Dernicks also contend that that the Standstill agreement, referencing a "valuation of zero" is ineffective because it was signed "after the conversion had already occurred," did not extend the "Maturity Date past the conversion date," did not "undo the automatic conversion," and is inadmissible parol evidence. *Id*. at 17–18 (citing s*ee Tempest Pub., Inc. v. Hacienda Records & Recording Studio, Inc.*, 2013 WL 5964516, at *10 (S.D. Tex. Nov. 7, 2013) ("When a contract is unambiguous, the court cannot use parol evidence to vary or contradict the contract terms.")).

Alternatively, the Dernicks contend that if the Court finds that Section 6 is subject to two or more reasonable interpretations, it is ambiguous and not ripe for summary judgment. *Id*. at 18 (citing *Boston Ship Repair LLC v. Ocean Ships Inc.*, 4:14-CV-405, 2016 WL 4398677, at *3 (S.D. Tex. Aug. 18, 2016) (Harmon, J.) ("Courts generally hold that, where a contract is ambiguous, interpretation of the contract becomes a question of fact, and therefore summary judgment is inappropriate.")). The Dernicks characterize the two interpretations as follows: (1) the Dernicks assert that Russell and Northstar's lack of election rendered "all balances" converted into "Member Interests" "in full satisfaction of the debt"; and (2) they allege Russell

and Northstar assert that conversion occurred, but that "the value of the interest determined whether the debt was fully satisfied." *Id*. at 19–20. In their respective Replies, Russell and Northstar concur that the Notes are unambiguous and that the $0 valuation of the Member Interests converted determines whether the debt was fully satisfied. Docs. 17 at 7, 9; 16 at 2, Cause No. 4:17-CV-1266

### *Russell, Northstar, and the Dernick's Replies and Motion to Strike*

In its Reply, Russell contends that the Notes "contain a Roadmap . . . designed to give value to the security and ensure that Plaintiff is repaid." Doc. 17 at 6. Russell asserts that Section 4 makes the Notes due immediately upon "an Event of Default." *Id*. Russell asserts Section 5 requires Russell to first look to the pledged interests to determine if that security fails to satisfy the debt. *Id*. Then, Russell assert's that Section 6's appraisal process determines "what, if any, amounts the Defendants would owe Plaintiff." *Id*. Thus, Russell asserts that following the appraisal rendering a "zero ($0)" valuation of the Member Interests, "recourse against the Defendants individually is now appropriate." *Id*. at 7. And the Dernicks owe Russell the "full amount due under the Notes Notes—$8,918,459, plus 18 percent interest, attorneys' fees, and costs of court." *Id*.

In its Reply, Northstar makes the same assertions as Russell, but adds that the Standstill agreement set out a "simplified appraisal process," "and everyone agreed that if the Dernicks failed to complete the appraisal by February 18, 2016, a zero value would be given the Dernick Encore Member Interests for the purpose of the conversion paragraph." Doc. 16 at 9, Cause No. 4:17-CV-1266.

In their Reply and Sur-Reply, the Dernicks revisit their different turn in the roadmap. The Dernicks assert that Russell and Northstar had to choose between the automatic conversion of

Member Interests that settled the "*entire* outstanding balance" or they could elect to "exclude a portion" of the outstanding balance. The Dernicks assert that only if Russell and Northstar excluded a portion of the debt, then they could access Section 5's other available remedies. Doc. 19 at 10. But any excluded portion would "still have been subject to first being satisfied out of Dernick Land's Member Interests," under Section 5. *Id*. at 12. If any claims were not fully satisfied by the Member Interests, which Section 6's last sentence recognizes,[3] then and only then, could Russell and Northstar "seek recourse through other creditor rights and remedies." *Id*. The Dernicks also assert that Russell and Northstar would be subject to the requirements of TEX. BUS. & COMM. CODE §§ 9.601, *et seq*. in pursuit of other remedies. *Id*. at 7.

In their Motion to Strike, Russell asserts that the Dernicks newly asserted that the Notes were non-recourse notes and the Texas Business and Commerce Code requirements. Doc. 20 at 2. In support, Russell asserts that the Court should not consider arguments raise for the first time in a reply brief. Id. (*Covington v. Covington*, No. 4:13-CV-0330, 2017 WL 635502, at *10 (S.D. Tex. Feb. 14, 2017) (Harmon, J.) (quoting for this principle *Blanchard & Co. v. Heritage Cap. Corp.*, No. 3:97-CV-0690-H, 1997 WL 757909, at *1 (N.D. Tex. Dec. 1, 1997)). The Court agrees. Insofar as the Dernicks advance new arguments as to the Notes characterization as non-recourse notes, the Court will not consider those arguments. *Id*. But the Court need not rule on the arguments concerning the Texas Business and Commerce Code because the Dernicks assert that this requirement is relevant only if Russell and Northstar excluded a portion of the debt from the conversion process. No party alleges exclusion, and so the Texas Business and Commerce Code requirements are neither illustrative nor relevant. Accordingly, the Court hereby

**GRANTS** Russell's Motion to Strike, Doc. 20.

---

[3] "[T]he discounted fair market value of Dernick Land's Member Interests may not be sufficient to satisfy all remaining claims." Doc. 1-1.

*Analysis*

The Court agrees that the Notes are unambiguous, and notes that the parties agree on the majority of the contract and facts. *See Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 333; *Friendswood Dev. Co.*, 926 S.W.2d at 282. The parties agree that under Section 5, Russell and Northstar must "first" look "solely" to the Member Interests for satisfaction. The parties also agree that Section 6 lays out the trigger for automatic conversion,[4] which was triggered here, the subsequent appraisal process, and that the Member Interests appraisal influences the satisfaction of the debt. They disagree on how the Member Interests appraisal affects the satisfaction of the debt, and how the Standstill agreement modifies the appraisal process. But the parties' disagreement does not render the contract ambiguous. *See Dynegy Midstream Servs., Ltd. P'hip*, 294 S.W.3d at 168. And as between the two, the Court holds Russell and Northstar's interpretation compelling.

Section 6 explains how the Member Interests appraisal affects the debt in at least three places. First, the parties recognized that the Membership Interests might "not be sufficient to satisfy all remaining claims," and so created a schedule to set the priority for Member Interests allocation between the lenders. Second, the transfer of Member Interests would not to occur until after the appraisal, presumably because the parties recognized that the debt might not satisfy all remaining claims.[5] And third, the appraisal process provided that failure to make an appraisal

---

[4]    Under Section 6 and absent an election by Russell and Northstar, the debt would be automatically converted into Dernick Encore Member Interests following January 5, 2016, at a discount rate of seventy percent (70%) of the then-current fair market value.

[5]    Section 6 reads as follows:
> The appraisal process shall be completed no later than thirty (30) days after the Maturity Date and transfer of Dernick Land's discounted Member Interests in Dernick Encore in payment of any remaining balance due on the Notes (or part thereof if elected by Payee), shall be completed as soon as possible thereafter.

would allow the debt to continue to accrue.[6] None of this language lends support to the Dernicks' assertion that the parties sought primarily to protect against Russell and Northstar's potential windfall by over-transfer of valuable Member Interests. Doc. 16 at 9. This language suggests that the parties allowed for other remedies after the Member Interests partially satisfied the debt.

But what about those lenders who were not allocated Member Interests or allocated insufficient Member Interests to satisfy the debt? Section 6 "further" said that "payment shall not limit or exclude any or all other creditor remedies available to Payees." And the conditional portion of that sentence does not reference the election provision at the beginning of Section 6.[7] Thus, the Court does not hold, as the Dernicks assert, that this right to pursue other remedies is only available for an excluded portion of the debt.

And *Roswell*, the unpublished Second Circuit case that the Dernicks' use to suggest that "the automatic conversion" "in payment of any remaining balance" extinguished the debts owed, is distinguishable from the present case. *Roswell Cap. Partners, LLC. v. Beshara*, 436 F. App'x at 35; *Alternative Const. Techs.*, 2010 WL 3452378, at *6.

In *Roswell*, the court held a party could not undo a stock transfer where that transfer in satisfaction of the debt was contractually allowed, and the stock was valued sufficiently to extinguish the debt. Roswell Capital Partners opposed other secured JMB lenders on who would

---

[6]     Section 6 reads as follows:
        If the appraisal is not completed by such date (except if any delay is caused by Payee's appraiser), the interest on any outstanding unpaid amount hereunder will accrue at twenty-four percent (24%) annually (in lieu of the eighteen percent (18%) above) at the end of such 30-day period and until the final appraisal process is complete.

[7]     Section 6 reads as follows:
        The parties recognize that the discounted fair market value of Dernick Land's Member Interests may not be sufficient to satisfy all remaining claims and hereby agree that payment priority shall be in accordance with Schedule 1 of the Pledge Agreements, and further, that said payment shall not limit or exclude any or all other creditor remedies available to Payees.

get the money. 2010 WL 3452378, at *1. JMB had a secured contractual right to convert their debt into equity in the borrower. *Id*. at *2–3. Section 1.2 of the note provided that the note could be paid by check or wire, "or converted into equity of the Company at the option of the Payee [JMB]." *Id*. at *2. Section 1.4 contained a mandatory provision stating that the note "will be converted into [315,000] Shares of Common Stock [of ACT] at any time, but no later than the company's active trading on the OTC Bulletin Board ('Next Round'), plus an additional amount for interest conversion." *Id*. Section 1.4 also contained a provision providing that JMB could "unwind the transaction" if the "stock price falls below $2.00 per share." *Id*. The debt was converted to stock. *Id*.

Subsequently, JMB exercised its contractual right to return shares and reinstate the debt obligation. Meanwhile, the borrower had filed UCC-3s to terminate JMB's security interest and Roswell had extended their own secured credit and filed UCC-1s. The *Roswell* court held that the conversion extinguished the obligation because the initial stock value was "sufficient to satisfy ACT's obligation," and could not be re-secured. *Id*. at *6. The Second Circuit affirmed stating "because the equity conversion extinguished the debt obligation, and a security interest cannot survive the debt's extinguishment, when JMB converted its debt to equity shares in ACT, any security interest it had in the collateral was also extinguished." *Roswell*, 436 F. App'x at 35–36.

But *Roswell* is distinguishable. The present case is not a priority determination between creditors as an attempt to resurrect a debt, but a determination of what amount is still owed, if any, following a stock, or Member Interests, payment to satisfy the debt. Like *Roswell*, stock was automatically converted to satisfy the debt. But unlike *Roswell*, the value of the Member Interests might be insufficient to satisfy the debt, and if the payment was insufficient to satisfy the debt, the parties included a reservation sentence providing that insufficient payment would

not limit other remedies. So, the Court next considers how the Standstill agreement modifies the appraisal process to find out what amount the Dernicks still owe, if any.

Under the unmodified Notes, the original appraisal process provided that the parties choose appraisers who must then have completed the appraisal by February 4, 2016, or if the appraisal is completed after February 4, 2016, then any unpaid amount accrues at twenty-four (24%) percent annually from February 5, 2016. The appraisal was never completed. If the Standstill did not modify the appraisal process, as the Dernicks assert, then the Dernicks would be responsible for an unpaid amount accruing at 24% until the appraisal is concluded. But the Standstill did modify the appraisal process.

The parties agreed to modify the appraisal process by limiting the appraisal to "two appraisers" and requiring the appraisal "to be completed thirty (30) days from the Effective Date [January 19, 2016]," instead of the Maturity Date. They also added that the "failure to complete the Appraisal in thirty (30) days from the Effective Date will result in a zero-value valuation." Doc. 12 at 43. In consideration, Russell and Northstar also agreed not to take any action regarding default until "fifty (50) days" from January 19, 2016. Doc. 12 at 43–45. Parties can subsequently modify contracts by agreement and for consideration, and they did so here, when the appraisal process was modified in return for a delay on actions. *See Pace Concerts, Inc. v. Smith*, 990 F.2d 626 (5th Cir. 1993)

But no appraisal was ever completed. Docs. 16-1 at 4; 16-2 at 4. Therefore, the agreed appraisal value of the Member Interests became $0.

Following the $0 valuation that completed the appraisal process, and in recognition that the $0 Member Interests would "not be sufficient to satisfy all remaining claims," the Member Interests were assigned, presumably according to Schedule 1.

The Court holds that Section 5 permits Russell and Northstar to "have full recourse against" the Dernicks for any "outstanding principal, accrued but unpaid interest, and/or accrued and unpaid costs and expenses." Russell and Northstar "look[ed] first solely to the units and member interests," but because 70% of $0 remains $0, the members interest transfer did not satisfy any amount of the debt. And the payment of the membership interests does not "limit or exclude any or all other creditor remedies," including its present suit to collect for breach of contract. Accordingly, the Court

**GRANTS** Russell and Northstar's motions for summary judgment and holds that they are entitled to award promissory note principal along with pre- and post-judgment interest, attorney's fees, and costs

## IV. Conclusion

For the foregoing reasons, the Court hereby

**ORDERS** that Russell's Motion to Strike, Doc. 20, and Russell and Northstar's Motions for Summary Judgment, Doc. 12, under Cause No. 4:17-CV-1230, and Doc. 10, under Cause No. 4:17-CV-1266, are **GRANTED**. It is further

**ORDERED** that the Dernicks' Cross-Motions for Summary Judgment, Docs. 16 & 12, under Cause Nos. 4:17-CV-1230 & 1266, are **DENIED**. Accordingly, the Court

**ORDERS** the following:

1. Summary Judgment is granted in favor of Russell and Norsthar against Stephen H. Dernick and David D. Dernick. A judgment shall issue separately.

2. Russell shall recover $4,939,484 in principal plus 18% interest per year until Judgment (compounded annually) on the promissory note against Stephen H. Dernick.

3. Russell shall recover $3,978,975 in principal in principal plus 18% interest per year until Judgment (compounded annually) on the promissory note against David D. Dernick.

4. Northstar shall recover $1,549,733 in principal plus 18% interest per year until Judgment (compounded annually) on the promissory note against Stephen H. Dernick.

5. Northstar shall recover $1,248,385 in principal plus 18% interest per year until Judgment (compounded annually) on the promissory note against David D. Dernick.

6. Russell and Northstar shall each recover attorney's fees from Stephen H. Dernick and David D. Dernick, and Russell and Northstar shall provide such proof by way of affidavit and exhibits within fourteen (14) days of this order.

7. Russell and Northstar are entitled to recover from the Dernicks an award of court costs and post-judgment interest on the amounts awarded herein at an annual rate of 5% from the date of this Judgment until paid.

SIGNED at Houston, Texas, this 31st day of March, 2018.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE